## Armstrong County Tourist Bureau v. Heilman

*Jerome D. Lombardi,* for plaintiff.
*Jack D. Heim,* for defendant.

HOUSE, *P.J.,* June 29, 1982—This is an action in mandamus brought by plaintiff to compel defendant to reinstate a license issued by defendant to plaintiff under the Pennsylvania Bingo Law. Before the court is plaintiff's motion for peremptory judgment.

Defendant has answered plaintiff's complaint and the parties have been afforded opportunity for submission of both oral and written argument and submission of briefs.

## FACTS

From the complaint, answer and new matter, the following appears to be the factual situation surrounding this dispute:

Under date February 1, 1982, Armstrong County Recreation Authority made application to the defendant County Treasurer for a license to conduct bingo at premises owned by it at 415 Butler Road, Kittanning, Pa. and known as Belmont Arena. Apparently, defendant treasurer issued a bingo license pursuant to this application. Subsequently,

however, on March 19, 1982, the district attorney of Armstrong County instructed defendant treasurer to revoke or forfeit this license on the ground that, as a quasi-governmental body, the recreation authority was not entitled to hold a bingo license. Thereafter, on April 2, 1982, and apparently without further proceedings, the recreation authority returned the bingo license issued to it and the same was canceled and the license fee refunded.

Meanwhile, on March 29, 1982, plaintiff Tourist Bureau prepared an application for a license to conduct bingo at the same premises, Belmont Arena, which are owned and operated by Armstrong County Recreation Authority. On April 12, 1982, defendant treasurer issued a bingo license to plaintiff as applied for.

On May 24, 1982, defendant treasurer forwarded a "Notice of Revocation" of plaintiff's bingo license to plaintiff and therein purported to revoke said license on the ground that plaintiff was simply a front for the recreation authority which had previously been denied a bingo license and that the whole thing was an illegal subterfuge designed to deliver the expected financial benefits of bingo games to the recreation authority.

Thereafter, on June 3, 1982, plaintiff filed its action in mandamus and, contemporaneously, filed its motion for peremptory judgment. The matter has been twice argued and is ready for disposition.

## DISCUSSION

The bingo law was enacted by the Pennsylvania Legislature in 1981 (Act of July 10, 1981, P. L. 214), and became effective 120 days thereafter.

Even a cursory reading of the act, together with the record of the legislative proceedings which pre-

ceded this enactment, is sufficient to convince that the overriding legislative intent was to legalize and regularize a pre-existing, albeit illegal, source of financial support for such community groups as churches, fire companies, veterans' organizations, ambulance services and the like. Notwithstanding this paramount legislative intent, it is also clear that the legislature knowingly used language in the statute which would render eligible or bingo licenses groups which had not been a traditional part of the pre-existing bingo underground. The legislative record plainly shows that the legislature understood that legalization of bingo under the language used could and would tempt a broad spectrum of "civic" associations to try their hand at calling the numbers and, coincidentally, to cut a slice of the bingo pie for themselves.

In doing this, the legislature may well have undermined the financial support of the very groups it intended to help through the enactment of this legislation. Be that as it may, the fact remains that the statutory language is sufficiently broad and imprecise of definition as to encompass almost any not-for-profit organization which promotes an arguably charitable or civic purpose. The act defines a "civic purpose" as a "community purpose" and that is a very broad and imprecise term, indeed.

Plaintiff Armstrong County Tourist Bureau was organized under the Non-Profit Corporation Law of Pennsylvania and its corporate purpose as stated is: "To stimulate tourist activities in the Armstrong County area."

While debate is certainly possible, it would seem that plaintiff is, prima facie, an association organized on a non-profit basis for the promotion of a "civic"; that is, "community" purpose.

When plaintiff applied for a bingo license, one

was issued to it by defendant treasurer as the issuing authority for this county. The application filed by plaintiff shows that it proposed to conduct bingo at 415 Butler Road (Belmont Arena) and that it was leasing those premises from the owner thereof under a written agreement providing for a rental *not* based on the amount of receipts realized from the bingo.

The unexecuted lease between plaintiff, as lessee, and the recreation authority, as lessor, which is attached to plaintiff's complaint in this proceeding, calls for a fixed rental of $500 for each of the specific dates covered by the lease. Interestingly (and perhaps ominously), the purported lease covered only four dates in May 1982 and made no provision for extension or renewal. Thus it must be presumed that if plaintiff desired to continue operations under the license after May 1982, it would have been necessary to negotiate a new lease with the owner with, perhaps, a different rental figure. It occurs to the court that if a bingo licensee occupied leased premises under a series of short term leases such as the one in the case at bar, the potential for abuse of the rental provisions of the act is obvious. Since bingo licenses are issued for use on particular premises and are valid for a period of one year, it is the opinion of the court that the county treasurer could have, and undoubtedly should have, insisted that plaintiff (or any other applicant), as part of the application procedures, produce an executed lease of the premises covering the entire license year and providing for either a fixed total rental or a definite rent schedule so that it could be determined whether or not the rental provisions of the act were to be complied with. However, it would appear that the county treasurer made no such demand and proceeded to issue a bingo license to plaintiff under

date April 12, 1982. However, we see no reason why the district attorney cannot require plaintiff to produce evidence of such a proper lease even now.

Despite plaintiff Tourist Bureau's arguments to the contrary, the court is of the opinion that the initial issuance of a bingo license by the county treasurer may not be a mere ministerial duty. Implicit in the act is the imposition of a duty upon the county treasurer to license only those organizations whose aims, purposes and character bring them within the definition of an "association" eligible to receive and hold a bingo license. In order to discharge that duty, the county treasurer at minimum would have the power to require substantiation and documentation as to the nature of the "association" itself as well as to every statement or assertion made in the application for bingo license. This is not to say that the county treasurer has the power to refuse arbitrarily to issue a license. What we mean to say is that the bingo law does not require the treasurer to blindly issue a license to each and every applicant who presents an application which is complete and regular on its face. Indeed, the application form nowhere requires the applicant to set forth those facts upon which a determination of eligibility can be made. Thus, it necessarily follows that the issuing authority *must* make such a determination by further investigation or inquiry. It also necessarily follows that he can be required to issue a license *only* to an eligible "association."

However that may be, the case at bar involves a purported revocation by the county treasurer of a license previously issued by him to plaintiff. Thus, we must assume that plaintiff is an eligible "association" and that the treasurer was satisfied that plaintiff had met all licensing criteria as of April 12, 1982.

The question then becomes: Does the county treasurer, as issuing authority, have power under the bingo law to revoke an existing license for any reason except upon advice and instruction of the district attorney?

Unquestionably, as noted above, the county treasurer has important duties and powers with regard to the initial issuance of bingo licenses. Having once exercised those powers and discharged those duties and issued a license, does he retain the power to revoke? We think not and so will grant plaintiff's motion for peremptory judgment.

The bingo law is so structured that sections 3, 4 and 5 are the sections containing definitions, legalizing licensed bingo, providing for licenses and license fees, regulating operation of bingo games, setting forth requirements for applications, limiting prizes, frequency of games and maximum compensation of game employes. Section 6, under the heading "Revocation of licenses" sets forth the grounds and procedures for revocation.

Section 7 contains penalty provisions and section 8 provides for powers in the district attorney additional to those contained in section 6.

Nowhere (with one exception having no application to this case) does the act contain any express grant of authority to the county treasurer to revoke a license once it is issued *except* upon advice and instruction of the district attorney. Moreover, it is impossible to imply any such independent revocation power from the provisions of the act. All enforcement powers are vested in the district attorney and, with the one exception, the treasurer can revoke or refuse to renew a license only upon being informed by the district attorney that that officer has found a licensee to be in violation of one or more of the provisions of the act. The one instance of

independent revocation power vested in the treasurer is provided for in section 6(c) under the heading: "Possible revocation." The power granted in section 6(c) is not pertinent to the case at bar.

We agree with defendant treasurer that, in those cases where he determines that an applicant association is ineligible for a bingo license, mandamus may not be the proper remedy for the aggrieved applicant. Rather, as we see it, an appeal to the court under the provisions of the local Agency Appeals Law may well be the proper remedy. But we need not decide this question since we have concluded that defendant treasurer has no power or discretion under the bingo law to review, revoke, forfeit or cancel an issued license except under very narrow circumstances; none of which apply here. Once the treasurer issued a license, he has exhausted his powers and it then becomes the function of the district attorney to investigate any violations of the act including complaints as to the eligibility or ineligibility of the licensee to continue to hold a bingo license.

Indeed, the district attorney and treasurer have previously recognized the proper allocating of their respective post-issuance duties. After the initial issuance of the bingo license to the recreation authority, the district attorney determined that the licensee was ineligible to hold a license and so advised the treasurer. That officer then revoked the recreation authority's license upon the district attorney's advice and instruction. That is the very procedure set out in the bingo law and it is the one which was followed in the matter of the recreation authority license. It was not followed in the case at bar but it should have been.

As we noted earlier, defendant treasurer might well have questioned several aspects of plaintiff's

bingo license application when it was filed with him. He did not do so and, instead, issued the license. We hold that he now has no power to review that action and that, if there is to be any review, it must be initiated by the district attorney upon complaint received.

Indeed, it would seem that, in the future, if the treasurer has even the slightest reason to question an application for bingo license, it would be proper for him to refer the matter to the district attorney. That officer is equipped to conduct investigations and inquiries and, under the bingo law, is the officer who ultimately must determine the continued eligibility of a licensee to hold a license.

The bingo law is not a particularly outstanding example of skillful legislative draftsmanship. There are many obvious and not so obvious shortcomings. For instance, the act is silent as to the methods and procedures to be employed in both licensing and revocation matters. Surely elementary considerations of due process would seem to mandate that issuance of licenses could not be refused nor licenses revoked without a hearing or an opportunity to be heard being afforded to the applicant/licensee. We would suggest then to the issuing authority and to the district attorney that, on due process grounds alone, they may not have the power to take unilateral summary actions in licensing and revocation matters under the bingo law.

In the case at bar defendant treasurer summarily and unilaterally determined that plaintiff's license was a subterfuge to funnel bingo money to an ineligible organization. He may well be right in his conclusion but he simply lacks the power to revoke for that or any other reason pertinent here. In any event, plaintiff-licensee has never operated under

its license and it will be up to the district attorney to determine if plaintiff, in practice, is violating any of the provisions of the act or is, in fact, an ineligible group.

This court is acutely aware that many churches, veterans' groups and volunteer fire companies—the organizations which have traditionally relied upon bingo income to fund their activities—are fearful of and angered by the prospect of a "big game" setting up in their midst and siphoning off the revenues which they have worked so hard to obtain in the past. We are also aware that if their worst fears are realized and their bingo revenues do dry up, then the whole community will suffer. In the case of the fire companies, any shortfall in revenues will be catastrophic if it results in reduced ability to equip and man the companies. Indeed, it requires no flight of the imagination to foresee dire consequences to the taxpayers if financial calamity befalls the fire companies.

The court shares the apprehensions of these true community organizations. Nonetheless, the bingo law permits arguably "civic" organizations such as plaintiff to obtain licenses and it permits operation of what, for this community, are big games. While we sympathize, this court is powerless to undo that which has been wrought by the General Assembly. If there are changes to be made in the bingo law, they will have to be made by the same body which enacted it.

Rule 1098 of the Rules of Civil Procedure relating to mandamus provides that the court may, at any time after the filing of the complaint, enter judgment if the right of plaintiff is clear. We have determined that the right of plaintiff at bar is clear and so we now enter our order upon a finding that defendant treasurer, as issuing authority, was

without power to revoke plaintiff's bingo license for the reason stated by him and that his purported revocation was without valid force or effect.

## ORDER

And now, June 29, 1982, after argument and submission of briefs, and for the reasons set forth in the annexed opinion, the motion of plaintiff for peremptory judgment is granted and it is ordered, adjudged and decreed that judgment be and is hereby entered in favor of plaintiff and against defendant. It is further ordered and directed that plaintiff's bingo license no. 82-005 be deemed to be valid and in full force and effect for the term therein specified subject, of course, to the several provisions of the bingo law.